CENTRAL APPALACHIAN COAL
COMPANY, Petitioner,

v.

Director, Office of Workers' Compensa-
tion Programs, United States Depart-
ment of Labor, Romie C. FLETCHER,
Respondents.

No. 81-1340.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1981.

Decided June 2, 1982.

Craig W. Hukill, U. S. Dept. of Labor, Washington, D. C. (T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., Virginia B. Ragle, Acting Counsel for Black Lung Benefits, Washington, D. C., on brief), for respondents.

Before FIELD, Senior Circuit Judge, and BUTZNER and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Central Appalachian Coal Co. (Central) appeals the decision of the Benefits Review Board (Board) which granted benefits to the claimant under the Black Lung Benefits

Act of 1972, 30 U.S.C. § 901 *et seq.* (Supp. 1976). Because we find that the Board applied the proper legal standards and that there is substantial evidence to support the Board's factual determinations, we affirm the holding of the Board.

## I.

The claimant worked in the coal mines virtually all of his adult life. Until he resigned on October 24, 1974, the claimant had worked for Central for twenty-four years. The principal jobs held by the claimant at Central were those of "trackman" and "timberman." The two jobs involved the loading and unloading of wooden ties and metal rails, positioning and fastening the rails for the track, running a motor, and erecting heavy wooden supports for the mines. All of these functions involved heavy work, except running a motor. The claimant never ran a motor full time for Central, but he would drive a motor out to lay track in the morning and drive the motor back to the shop at the end of the work day.

At the administrative law hearings, it was found that the claimant had a sixth grade education and that there was evidence of pneumoconiosis, though there was not sufficient medical evidence for a finding of disability without resort to vocational factors. See 20 C.F.R. § 410.426 (1981). At the second hearing before an Administrative Law Judge (ALJ) Central presented as a witness S. Thomas Serpento, Director of Personnel at West Virginia University. Mr. Serpento had conducted a survey of employers in the area proximate to the claimant's residence and testified that sedentary, light, and medium exertion levels of work were available in the area. He also testified as to the skills possessed by the claimant, the availability of jobs claimant could perform, the claimant's comparability with others who had applied for jobs at West Virginia University, and the unemployment rate.

The Board held that once the claimant establishes disability due to black lung that would prevent him from returning to his usual or regular coal mine employment, the burden of proof shifts to the employer to identify gainful work requiring the miner's skills, to show that the location of the jobs is within commuting distance for the miner, and to show that the miner would have a reasonable opportunity to be hired. The ALJ found that Central had not met its burden of proof to rebut the prima facie showing of disability by the claimant through the testimony of Mr. Serpento. Central now appeals the Board's affirmance of the finding by the ALJ that the claimant had proved his disability and that Central failed to meet its burden of proof.

## II.

### A.

The Board held that once the claimant shows that he cannot return to his previous coal mine work, the burden of proof shifts to the coal mine operator. Central argues that the burden of proof does not shift and, if it does, the claimant did not meet his burden because he can still perform one function that was part of his work in the coal mine.

Central's argument that the burden of proof does not shift is contrary to the plain reading of the Black Lung Benefits Act. Section 402(f) of the Act, 30 U.S.C. § 902(f) (Supp.1976), provides that the black lung standards defining disability "shall not provide more restrictive criteria than those applicable under (the Social Security Act) . . ." Disability for the purposes of Social Security is defined by 42 U.S.C. § 423(d), and it is undisputed that the burden of proof shifts in Social Security disability cases once the claimant shows that he cannot return to his previous work. *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975). Central argues, however, that because the claim is being contested under 20 C.F.R. § 410.426 (1981) ("Determining total disability") in this instance, rather than 20 C.F.R. § 410.412 (1981) (" 'Total disability' defined"), there is no requirement to be as lenient as Social Security disability. Central's argument is not per-

suasive. A claimant must be within the standards of both § 410.426 and § 410.412 before he can be granted black lung benefits. Furthermore, § 410.412 incorporates § 410.426,[1] thereby indicating that the regulations should be read consistently. The Board was correct in holding that the burden of proof is upon the operator once the claimant establishes that he cannot return to his former coal mine job.

### B.

██ Central also contends that the claimant has not carried the burden of showing that he cannot return to his previous coal mine work under § 410.426(d).[2] His previous jobs with Central as trackman and timberman principally consisted of heavy work but evidence revealed that the claimant could no longer perform heavy work. Central would have us consider the individual functions that made up the jobs and hold that if the claimant can still perform any function remotely involved in the claimant's previous job description, then the claimant has not shown that he is unable to return to his past work. We decline the opportunity to so hold.

In particular, one of the functions of the claimant's past work was to drive a motor to a work site and then drive it back to the shop at night. Central thus contends that the claimant was a motorman.[3] The operator has chosen this function of the claimant's past job, and a relatively insignificant one at that, and argues that since this function was medium exertion level work the claimant could return to his previous job without having to engage in heavy labor.

We do not agree with Central that "previous coal mine work" means any small function involved in a past job. The regulations require, instead, that a claimant prove that he can no longer practically perform the duties listed in the description of his past job. Being able to perform a single function of that job is not sufficient if it does not allow the worker to accomplish the purpose of his position. The claimant carried his burden of proof in this situation by showing that he could not return to the positions of timberman or trackman.

### III.

██ Once the burden of proof shifted to the mine operator, Central contends that the Board erred by applying the wrong standards. Although we do not endorse the language used by the Board, we find that it applied the proper standards to reach its decision.

A plain reading of the appropriate regulations reveals the proper standards by which disability should be determined where there is insufficient medical evidence. Subsection 410.426(a)[4] outlines the

1. Section 410.412 "Total disability" defined.
   (a) A miner shall be considered totally disabled due to pneumoconiosis if:
   (1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time (that is, "comparable and gainful work"; see §§ 410.424–410.426); . . .

2. Section 410.426:
   (d) Where a ventilatory study and/or a physical performance test is medically contraindicated, or cannot be obtained, or where evidence obtained as a result of such test does not establish that the miner is totally disabled, pneumoconiosis may nevertheless be found totally disabling if other relevant evidence (see § 410.414(c)) establishes that the miner has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, but also, considering his age, his education, and work experience, prevents (or prevented) him from engaging in comparable and gainful work.

3. The job of motorman in a coal mine ordinarily connotes one who drives an engine (motor) pulling coal cars through the mine on a track. The claimant testified that he has never driven a motor in this manner.

4. Section 410.426 Determining total disability: Age, education and work experience criteria.
   (a) Pneumoconiosis which constitutes neither an impairment listed in the appendix to this subpart (see § 410.424), nor the medical equivalent thereof, shall nevertheless be found totally disabling if because of the sev-

criteria for a nonmedical finding of disability. When read with subsection (d),[5] the standard for a disability finding is apparent. Through relevant evidence the claimant must show a chronic respiratory or pulmonary impairment; the miner must also prove that he can no longer perform his previous coal mine work. The burden of proof shifts to the operator as discussed in Section II, *supra.* If it is then found that the miner cannot engage in any comparable and gainful work that is available to him in the immediate area of his residence, with specific consideration of the miner's age, education, and work experience, the miner will be found to be disabled.

The Board adopted a shorthand phrase for the final stage of the nonmedical procedure. They summarized the language of the regulations into a "reasonable opportunity to be hired" test. We do not endorse the reasonable opportunity to be hired as an adequate inquiry, because the language of the regulations is more specific and meaningful. Carried to its logical extreme, a reasonable opportunity to be hired could be construed as requiring that the operator be successful as an employment agency to find the claimant a job. We are certain that

this is not the result Congress intended. The test simply should be whether in light of the impairment, age, education, and work experience or skills of the miner, he is unable to engage in any comparable and gainful work that is available to him in the immediate area of his residence.

### IV.

■ There is substantial evidence to support the Board's finding that the claimant is disabled. Considering the claimant's physical impairment, age, work experience, and education, there is substantial evidence that he cannot return to his old job, see Section II(B), *supra,* and that comparable gainful work is not available.[6]

Central asserts that it carried its burden of proof to show that jobs are available in the community that the claimant could perform. Mr. Serpento was a valuable witness for Central, and his testimony certainly met the burden of production of evidence. The decision of whether a claimant can perform a particular job is that of the ALJ and the Board, however, not of a hired witness. The Board found that Mr. Serpento was not able to carry the burden of persuasion and

erity of such impairment, the miner is (or was) not only unable to do his previous coal mine work, but also cannot (or could not), considering his age, his education, and work experience, engage in any other kind of comparable and gainful work (see § 410.-412(a)(1)) available to him in the immediate area of his residence. A miner shall be determined to be under a disability only if his pneumoconiosis is (or was) the primary reason for his inability to engage in such comparable and gainful work. Medical impairments other than pneumoconiosis may not be considered.

    The following criteria recognize that an impairment in the transfer of oxygen from the lung alveoli to cellular level can exist in an individual even though his chest roentgenogram (x-ray) or ventilatory function test are normal.

**5.** See footnote 2.

**6.** Sen.Rpt.No. 743, 92d Cong., 2d Sess. 18–19, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2322–23:

    Accordingly, the Committee expects the Secretary to adopt such interim evidentiary rules and disability evaluation criteria as will permit

prompt and vigorous processing of the large backlog of claims consistent with the language and intent of these amendments. Such interim rules and criteria shall give full consideration to the combined employment handicap of disease and age and provide for the adjudication of claim on the basis of medical evidence other than breathing tests when it is not feasible or practicable to provide physical performance tests of the type described in the above cited section from the Secretary's annual report. For example, an older miner who has developed pneumoconiosis, or another respiratory or pulmonary disease which is presumed to be pneumoconiosis, and who is no longer working as a miner, would be prevented from returning to or continuing in his usual work as a miner due to the combined employment handicaps of advancing age and respiratory or pulmonary disease, even though the disease may have produced relatively little functional loss. On the other hand, a younger miner might not be so severely handicapped unless the disease has produced sufficient functional limitation that he is unable to meet the work demands of coal mine employment, as determined by medical evaluation.

convince them that the claimant was capable of other work. In particular, the Board found that Mr. Serpento had no personal knowledge of the transferable skills from the claimant's previous employment or the requirements of the jobs he suggested the claimant could perform. *Fletcher v. Central Appalachian Coal Co.*, 3 Black Lung Rep. 10, 14 (Bene.Rev.Bd.1981). There is substantial evidence to support the Board's finding of disability in this instance. The Board's decision, accordingly, is

AFFIRMED.